UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-00002-TBR

DENISE CLARK
D/B/A MAJESTIC BERNESE MOUNTAIN DOGS                                    Plaintiff,

v.

LINDA WENGER
D/B/A MAJESTIC BERNESE MOUNTAIN DOGS                                   Defendant.

## MEMORANDUM OPINION

This matter comes before the Court upon several Motions, some filed by both Plaintiff Denise Clark and some by Defendant Linda Wenger. The Court will address each of these Motions below and will issue an appropriate Order concurrently.

### Factual Background

This lawsuit arises from a soured business deal between Wenger and Clark, both of whom breed Bernese Mountain Dogs, "a breed that originated in the Swiss Alps and that is known for its large, muscular build and good-natured, docile temperament." (Docket No. 1-4 at 1.) Wenger, a California resident, and Clark, a Kentucky resident, formed an informal partnership: from 2010 to 2013 they split the profits generated by Kentucky-born puppies that were sold in California. These puppies were sold with limited rights of registration with the American Kennel Club ("AKC"): that is, the puppies themselves would be recognized by the AKC as purebred Bernese Mountain Dogs, but their offspring could not be so registered. (Docket No. 1-4 at 2.) This arrangement generated gross sale proceeds of approximately $200,000.00 over the nearly three-year period. (Docket No. 1-4 at 2.)

With an eye toward showing select dogs competitively, Clark and Wenger retained ownership of a female puppy named Maddie and a male puppy named Coby. They agreed that the dogs would reside

with Wenger, a more experienced exhibitor. (Docket No. 1-4 at 3.) Wenger also represented that for competition purposes, both Maddie and Coby initially had to be registered in the AKC only in Wenger's name. (Docket No. 1-4 at 3.)

However, in Clark's telling, she learned in June 2013 that Wenger had clandestinely bred Coby to Maddie and had solicited reservations and deposits for their progeny, a litter of seven. (Docket No. 1-4 at 3.) Clark also discovered that Wenger hired Coby out for stud, sharing none of stud fees with Clark. (Docket No. 1-4 at 4.) Finally, Clark alleges that instead of selling two puppies—Sleigh Bell and Showpiece—with limited American Kennel Club registrations, Wenger retained them for herself with a full registration. (Docket No. 1-4 at 4.)

On July 5, 2013, Clark filed her Complaint in the Warren Circuit Court, alleging breach of fiduciary duty, fraudulent concealment, and breach of contract. (Docket No. 1-2.) She effectuated service using Kentucky's long-arm statute, listing the Secretary of State as an agent for service of process. *See* Ky. Rev. Stat. 454.210. Clark sought an accounting, specific performance for the limited registrations of Majestic Sleigh Bell and CA Majestic Showpiece, and for an injunction proscribing Wenger from using Maddie and Coby for breeding. She also sought compensatory and punitive damages. (Docket No. 1-2.)

According to Clark, the United States Postal Service ("USPS") attempted to deliver the summons and complaint via certified mail from the Kentucky Secretary of State to Wenger in July 2013. The attempted delivery was futile, though, as Wenger allegedly refused acceptance.[1] (*See* Docket No. 5-4 at 2.) The Secretary of State's Return of Service indicated that the summons and accompanying documents were mailed on July 11, 2013. (Docket No. 5-1 at 2.)

---

[1] Clark explains that the USPS defines "refused mail" as "[u]nopened mail that is not accepted by the addressee and is returned to the sender. The addressee must mark "Refused" on the mailpiece." USPS Publication 32, p. 187, July 2013, *Glossary of Postal Terms*, (about.usps.com/publications/pub32.pdf).

On October 4, 2013, Clark amended her Complaint to ask that Maddie and Coby be returned to her custody. (Docket No. 1-4.) As before, Clark attempted to serve Wenger through the Kentucky Secretary of State, but Wenger again refused acceptance. The Secretary of State's second Return of Service indicated that the summons and accompanying documents were mailed on October 8, 2013. (Docket No. 5-1 at 3.)

On November 21, 2013, Clark filed a Motion for Default Judgment on the Issue of Liability. The Warren Circuit Court scheduled a hearing from December 23, 2013, and mailed a copy of the scheduling order to Wenger using regular mail. On January 3, 2014, Wenger, through counsel, removed the state court action to this Court based on diversity of citizenship. (Docket No. 1.)

## Analysis

### I. Motion for Supplementation of Federal Court Record

As an initial matter, the Court notes that Clark asked the Court to order Wenger to file various documents that were not included with her Notice of Removal. (Docket No. 5) Namely, Clark seeks three Return of Service documents issued by the Kentucky Secretary of State, two of which reported that the July 11, 2013, and October 22, 2013, certified mailings were refused. (Docket No. 5 at 1.) Clark herself attached these Returns to her Motion in support of her argument that the Complaint was made available to Wenger more than thirty days before the filing of the Notice of Removal. (*See* Docket No. 5-1.)

In response, Wenger has attached additional exhibits that she argues offer a more comprehensive depiction, including a handwritten note from the Warren Circuit Court Judge speculating that a warning order attorney could be appropriate; Wenger's response to Clark's motion for default judgment in Warren Circuit Court, which states that she learned of the lawsuit only when she received the court's scheduling order on December 23, 2013; and an affidavit stating that she never refused an attempt at service. (*See* Docket Nos. 6-1, 6-2, and 6-3.)

All of the supplemental exhibits having been included with the Motion and Response, the Court will grant Clark's Motion for Supplementation. All attachments and exhibits to Clark's Motion, (Docket No. 5), and Wenger's Response, (Docket No. 6), are hereby ordered filed. The Court will consider all relevant exhibits with regard to the Motions discussed below.

## II. Motion to Dismiss

The Court will first address Wenger's Motion to Dismiss. Wenger argues that she lacks sufficient "minimum contacts" with Kentucky and that personal jurisdiction is thereby precluded. A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so. *See Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). This rule sometimes requires the court to determine whether the forum state's long-arm statute and the Due Process Clause of the United States Constitution contemplate such jurisdiction. However, when a state's long-arm statute reaches as far as the limits of the Due Process Clause, these inquires merge, leaving the Court to determine only "whether the assertion of personal jurisdiction . . . violates constitutional due process." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). Kentucky's long-arm statute indeed extends to the constitutional limit. *See Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992). Therefore, the Court's inquiry is confined to the constitutional analysis.

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding requirements of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 UU.S. 462, 471972 (1985) (quotation and citation omitted). Therefore, in order to subject a nonresident defendant to personal jurisdiction without violating due process, the defendant must have "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). "Minimum contacts exist when the Defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court

4

there." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A requirement of this conduct is that the defendant have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). As the Supreme Court has explained:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 475 (internal quotation marks, citations, and footnotes omitted).

The Supreme Court has emphasized that "parties who reach out beyond one state and create continuing obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473. "So long as a commercial actor's efforts are purposefully directed toward residents of another State, [the Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* at 476.

The Court has held that "the mere existence of a contract with a citizen of the forums state is insufficient to confer personal jurisdiction over a foreign defendant." *Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763, 770 (W.D. Ky. 2012) (quoting *Burger King*, 471 U.S. at 478)). However, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" may establish purposeful availament. *Id.* (quoting *Burger King* at 479).

Wenger, a California resident, denies the existence of a contract; she states that no written agreements memorialize any alleged agreements between Clark and herself, with all communications instead conducted via telephone. (Docket No. 4-1.) Furthermore, Wenger argues that she performed her part of any purported agreement entirely in California. In an attached affidavit, Wenger avers that she never traveled to Kentucky, opened a bank account there, or performed other dealings in the Commonwealth, and that she never met Clark in person. (Docket No. 4 at 3.) To the extent that she acknowledges contacts with Kentucky, she characterizes them as "random," "limited," and "entirely passive." (Docket No. 4 at 5.)

In light of these principles, the Court finds that the course of dealings between Clark and Wenger demonstrates that Wenger's contacts with Kentucky were not the type of "random, fortuitous, and attenuated contacts" that the purposeful availment requirement is designed to thwart from conferring jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (internal quotations and citations omitted). Although the particularities of Wenger's agreement with Clark remain unclear at this stage, the two apparently had several telephone conversations with regard to their de facto partnership. The Amended Complaint specifies that Clark bred the puppies in Kentucky and then shipped them to California. (Docket No. 1-4 at 2.) Wenger therefore knew that the puppies would be born and bred in Kentucky—something akin to manufacture. Moreover, "[s]ale proceeds in the form of cash or check were collected directly by [Wenger]"—who presumably forwarded such payments to Clark in Kentucky. (Docket No. 1-4 at 2.) And "[s]ale proceeds in the form of credit card payments were deposited into an account maintained by [Clark] at South Central Bank in Bowling Green ,Kentucky." (Docket No. 1-4 at 2.) Wenger's conduct pursuant to her business agreement with Clark facilitated the transaction of business in the Commonwealth of Kentucky. Such affirmative conduct constitutes purposeful availment. The Court will thereby deny Wenger's Motion to Dismiss.

**III.    Motion to Remand**

The Court will next consider Clarks' Motion to Remand this action to the Warren Circuit Court. Warren presents a two-pronged argument in support of her Motion. (Docket No. 8.) First, she contends that Wenger's notice of removal was untimely. She further argues that the Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy requirement has not been satisfied. The Court will address each argument in turn.

    **a.    Notice of removal**

A federal district court has original diversity jurisdiction when a suit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Generally, any civil action brought in a state court may be removed by a defendant to federal court if it could have been brought there originally. 28 U.S.C. §1441(a). But because removal statutes implicate federalism concerns, they must be narrowly construed. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). "A defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993).

Section 1446(b) establishes two temporal bars for removal from state courts where the initial proceedings do not allow for removal. A defendant has thirty days to file for removal after the receipt of "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). the defendant's right to remove under § 1332 may also be revoked where more than a year has elapsed "since the commencement of the action." *Id.*

Kentucky law determines the validity of service in a state court before the defendant's removal. *Bates v. Harp*, 573 F.2d 930, 923-33 (6th Cir. 1978) (applying state service-of-process rules in a removal analysis). Ky. Rev. Stat. § 454.210(3)(c) provides:

> The Secretary of State shall, within seven (7) days of receipt thereof in his office, mail a copy of the summons and complaint to the defendant at

7

> the address given in the complaint. The letter shall be posted by certified mail, return receipt requested, and shall bear the return address of the Secretary of States. The clerk shall make the usual return to the court, and in addition the Secretary of State shall make a return to the court showing that the acts contemplated by this statute have been performed, and shall attach to his return the registry receipt, if any. *Summons shall be deemed to be served on the return of the Secretary of State and the action shall proceed as provided in the Rules of Civil Procedure.*

(emphasis added); *see also Haven Point Enters., Inc. v. United Ky. Bank, Inc.* 680 S.W. 393, 395 (Ky. 1985) (holding that a signed, return receipt is not required as part of the return by the Secretary of State); *Davis v. Wilson*, 619 S.W.2d 709, 710-11 (Ky. Ct. App. 1980) (acknowledging proper service pursuant to the long-arm statute although the envelope containing the service was marked "unclaimed" upon return to the Secretary of State) (citation omitted)). Here, both Clark and the Secretary of State complied with Kentucky's long-arm statute; therefore, personal jurisdiction was exercised over Wenger when the Secretary of State made its return. The Court therefore finds that Kentucky's service requirements were met.

The Court must next determine whether Wenger's notice of removal was untimely. A sister court in the Sixth Circuit confronted a similar issue in *Ashford v. Bollman Hat Co.*, 2011 WL 127153 (E.D. Ky. Jan. 14, 2011). Although Plaintiff Ashford attempted service upon Defendant Bollman through the Kentucky Secretary of State, the documents, which had been sent via certified mail, were returned marked "unclaimed." On April 12, 2010, the Secretary of State issued the Return to the Fayette Circuit Court. On June 8, 2010, Bollman removed the action to federal court; two days later, Ashford filed a motion to remand, arguing that the notice of removal was untimely.

The Eastern District first noted that federal law governs 28 U.S.C. §1446(b)'s thirty-day deadline and explained that the majority of federal courts opine that service on a statutory agent does not trigger the § 1446(b) removal period. Instead, actual notice is key: actual receipt of formal service by the defendant initiates the removal period. *Id.* at *2 (collecting cases). However, the time limit for removal is not intended to "insulate defendants from the consequences of their own negligence." *Id.* at *3

(quoting *Cotter v. Milly LLC*, 2010 WL 286614 at *5 (S.D.N.Y. Jan. 18, 2011)). Such negligence was at play in *Ashford*: the company president received a postcard indicating that he had been sent a certified mail package, but he never bothered to collect it. Instead, he "justified the failure because he 'forgot' and 'was not able to get to the post office.'" *Id.* *Ashford* concluded that because the delayed notice to the defendant was caused by the company president's inaction, the court held that Bollman was equitably estopped from levying its removal. *Id.* at *1.

Similar results issue here. Like the Bollman defendants, the contents of Clark's lawsuit against Wenger were made available to Wenger upon delivery of the certified mail. Although Wenger denies having received the documents, the USPS returns mail as "refused" only when it is not accepted by the addressee, who must mark "Refused" upon it. (See Footnote 1, *supra*.) If Clark's account is to be accepted, Wenger refused service from the Kentucky Secretary of State and so marked the certified mail not only once, but twice.

Regardless, the Court need not assess Wenger's alleged bad faith avoidance of delivery. As *Ashford* makes clear, malfeasance is not required to justify estoppel; mere nonfeasance is sufficient to render a removal untimely. Accordingly, Wenger shall be estopped from extending the thirty-day period for removal prescribed by 28 U.S.C. §1446(b)(1).

### b. Amount in controversy

Finally, the Court will evaluate whether Clark's Amended Complaint satisfies the statutory requirements set forth in 28 U.S.C. § 1332. For a federal district court to exercise § 1332 diversity jurisdiction, the parties must be completely diverse, and the amount in controversy must exceed $75,000. There is no dispute that the parties are diverse. However, the parties disagree as to whether the amount in controversy exceeds $75,000.

The Sixth Circuit requires "the removing defendant [to] show that it is 'more likely than not' that the plaintiff's claims meet the amount in controversy requirement.'" *Rogers v. Wal-Mart Stores, Inc.*, 230

F.3d 868, 871 (6th Cir. 2000). This "does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state, and prove the plaintiff's claim for damages." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

Here, Clark seeks payment for one half of the proceeds for the alleged sale of sixteen puppies; one half of Coby's stud fees; and the return of Coby, Sleigh Bell, and Showpiece to her custody. (Docket No. 8-1). She estimates her compensatory damages would be $27,900, "plus $1,000 for each time Coby has 'gone on a date.'" (Docket No. 8-1 at 7.) She also seeks punitive damages. Clark specified no specific dollar amount in either her Complaint or her Amended Complaint. In her Motion to Remand, she stipulates that she "is willing to immediately foreclose the issue of subject matter jurisdiction by waiving any right to assert or receive more than $74,999 in total damages." (Docket No. 8-1 at 8-9; *see* Docket No. 8-2, Affidavit and Stipulation of Plaintiff Respecting Amount in Controversy.)

Plaintiffs are entitled to stipulate that they do not seek, nor will they accept, damages in an amount exceeding $75,000, which would destroy the amount in controversy for federal diversity jurisdiction. *Spence v. Centerplate*, 931 F. Supp. 2d 779, 781 (W.D. Ky. 2013). The United States Supreme Court has explained that factual stipulations are "binding and conclusive . . . and the facts stated are not subject to subsequent variation." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hasting Coll. Of Law v. Martinez*, 130 S. Ct. 2971, 2983 (2010) (quoting 83 C.J.S., *Stipulations* §93 (2000)). A stipulation is an "express waiver made . . . by the party or his attorney conceding for purposes of the trial the truth of some alleged fact." *Std. Fire Ins. Co. v. Knowles*, 133 S.Ct 1345, 1348 (2013) (quoting 9 J. Wigmore, Evidence § 2588, 821 (J. Chadbourn rev. 1981)). A stipulation, then, firmly binds the parties. *Id.*

The Court will uphold such a stipulation if it constitutes an "unequivocal statement . . . limiting damages." *Egan v. Premier Scales & Sys.*, 237 F. Supp. 2d 774, 778 (W.D. Ky. 2002). This contrivance

proves particularly helpful under Kentucky law, whereby plaintiffs cannot initially state an affirmative damages award in their complaint. Although the stipulation may clarify the plaintiff's demand for damages, it cannot reduce or change the demand in an effort at gamesmanship to avert federal jurisdiction. *Spence*, 931 F. Supp. 2d at 779.

The Court has previously addressed the adequacy of amount-in-controversy stipulations and has explained that statements "less than unequivocal" will not do. *Egan*, 237 F. Supp. 2d at 775. "To merely say that one will not accept money in excess of a certain amount limits neither the judgment nor the demand." *Id.* at 778. By contrast, the Court will accept unequivocal stipulations that leave "no doubt or out," thereby binding a plaintiff to seek less than $75,000 in damages in his complaint. *Van Etten v. Boston Scientific Corp.*, 2009 WL 3485909 (W.D. Ky. Oct. 23, 2009).

Here, Clark stipulates that she will neither seek nor accept an award in excess of the jurisdictional amount. Specifically, she avers:

> I swear that in the within action, and any subsequent actions, involving the April 20, 2013 litter, the November 13, 2013, litter, Majestic Swiss [M]ade (i.e., Maddie), Again Coby (i.e., Coby), Majestic and/or CA Majestic Showpiece that I will not seek or accept an award in excess of $74,999 inclusive of compensatory damages, punitive damages, attorney fees, and the fair value of any injunctive relief.

(Docket No. 8-2 at 2-3.) This stipulation plainly constrains her to recovering an amount not to exceed $74,999. Accordingly, the Court finds this stipulation binding and effective and determines that the requisite amount-in-controversy jurisdictional threshold has not been satisfied. Accordingly, no federal subject matter jurisdiction exists, and remand is appropriate.

### IV. Attorney fees

A district court finding remand appropriate may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). Although the Court will grant Clark's Motion to Remand, it finds no basis to grant her request for costs and attorney

fees incurred in seeking remand. Although removal was ultimately improper, the law in this circuit remains less than clear on this issue, with the Court relying primarily upon *Ashford v. Bollman Hat Co.*, an unreported case issued within the past three years. Moreover, Clark's Motion to Remand was buoyed by the binding stipulation discussed above, which had not been filed at the time of removal. Accordingly, the Court cannot say that Wenger lacked an objectively reasonable basis for seeking removal. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Therefore, the Court will not award attorney fees or costs to Clark.

## CONCLUSION

For the foregoing reasons, and being otherwise sufficiently advised, the Court concludes that:

(1) The Defendant's Motion to Dismiss, (Docket No. 4), will be denied;

(2) The Plaintiff's Motion to Supplement Federal Court Record, (Docket No. 5), will be granted; and

(3) The Plaintiff's Motion to Remand, (Docket No. 8), will be granted.

A separate Order will issue concurrently with this Memorandum Opinion.